Commonwealth ex rel. Hampton *v.* DeVeaux,
Appellant.

Argued September 25, 1956.   Before RHODES, P. J.,
GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.
(HIRT, J., absent).

*Henry N. Fineman,* with him *Morris Passon,* for
appellant.

*F. Emmett Fitzpatrick,* Assistant District Attorney, with him *Thomas M. Reed* and *Christopher F. Edley,* Assistant District Attorneys, *James N. Lafferty,* Deputy District Attorney, and *Victor H. Blanc,* District Attorney, for appellee.

OPINION BY CARR, J., December 28, 1956:

This case is somewhat unusual in that it involves an appeal from an order of the Municipal Court of Philadelphia, Domestic Relations Division, requiring a father to support his twenty-three year old married daughter. The question raised by the appellant is the reasonableness of the order of $10.00 per week. The record shows that the daughter together with her husband and three children are receiving public assistance in the total amount of $152.00 per month. Both the daughter and her husband testified that they were unable to work because of illness.

The father testified that he was working for the Pennsylvania Railroad earning $1.66 per hour and working forty hours per week. His net income according to him was approximately $100.00 to $105.00 each two-week pay period although his gross income would be $132.80 before deductions for railroad retirement and income tax. It further appears from the testimony that his wife has been ill for several years and that he has been required to borrow money to pay for her hospital and medical care. For this purpose he obtained two loans upon which he is paying $57.00 per month. In addition he is paying $23.26 per month for repairs made to the furnace in his home, $12.40 per month for roofing repairs and $9.23 per month for a fan, or total payments each month of $101.89 on account of monies borrowed. These expenses appear to be legitimate and

ordinary living expenses. He owns his home purchased in 1944 for $4,500.00 upon which there is no mortgage. No estimate was given as to its present value.

In the case of *Commonwealth v. Ritter*, 12 Leh. L. J. 155 (1927), Judge RENO, later a member of this Court, had before him a case involving a petition for the increase in the amount of a support order for a wife and child against a husband whose income was approximately $39.00 per week. The defendant was a member of a partnership which owed $1,863.63 and he was indebted on his personal account about $2,500.00. Judge RENO said, "We have here stated a problem which has perplexed us for a long period. All domestic relations cases are difficult of solution, but we doubt whether a more intricate case has been before us. Beyond all doubt, the wife needs and deserves more. Unquestionably, the defendant's resources are limited and, in the nature of things, he cannot be forced to pay more than his earning capacity allows. We cannot stand over him with a lash and drive him to greater wages; and, if a greater burden is placed upon him than he can bear he will default in his payments; imprisonment for default of payments will produce nothing on which his wife and child can subsist. What to do? . . . We must content ourselves with making such increase as will not unduly embarrass defendant and yet, if only to a small extent, relieve his wife and child. After all, a support order is always 'subject to revision as the financial ability of the party may make equitable': (Commonwealth v. Sherritt, 83 Pa. Super. Ct. R., 301) and to that extent is always, in its nature, temporary. Hence, upon a consideration of the whole case, conscious that this order will satisfy neither side but cherishing the hope that without unduly harming defendant it will appreciably alter the pitiable condi-

tion of the prosecutrix, we shall enter an order of $14.00."

Judge RENO, speaking for this Court in *Commonwealth ex rel. Yeats v. Yeats*, 168 Pa. Superior Ct. 550, 79 A. 2d 793, reduced a support order against a father in favor of a daughter by a previous marriage from $35.00 per week to $15.00 per week. The father's income from his business was $2,681.21, and from investments $1,600.00. It does not appear that he had any persons dependent upon him for support other than his second wife who had an income from investments of $500.00. In that case the total family income was $4,781.21. This left the defendant and his wife slightly more than $4,000.00 per annum for their own expenses.

In considering the ability of a person to pay a support order not only the net income but all the attendant circumstances must be taken into consideration. *Commonwealth v. Henderson*, 143 Pa. Superior Ct. 347, 17 A. 2d 692. Ordinarily the amount of the order should not exceed one-third of the defendant's income but of course this amount must vary depending on the total income, other assets and the number of persons he is legally obligated to support.

When reading *Commonwealth v. Ritter*, supra, we must take into consideration the fact that the cost of the bare necessities of life have increased greatly since that case was decided in 1927. Furthermore, the defendant had no other person or persons dependent upon him for support, and there were no governmental agencies such as the Department of Public Assistance to which his wife and child could turn for help. The defendant here, DeVeaux, fifty-nine years of age, has weekly earnings of approximately $66.40. After deducting income tax, railroad retirement benefits and the payments to reduce his indebtedness, he has only

$30.00 per week for maintenance of the home, taxes, food, clothing and other necessities of life for himself and his wife. If he is to be required to pay $10.00 per week for the support of his daughter, his net income for the week will be only $20.00.

The legislature in its wisdom made provision for such a situation in the Act of Assembly requiring a father to support an indigent daughter[1] by inserting the qualifying phrase, "if of sufficient financial ability." It was to take care of situations such as this that our laws pertaining to social legislation were passed. The defendant, together with all other taxpayers of the state, has been paying taxes and thereby contributing to the fund from which the Department of Public Assistance is now paying his daughter. To deprive a laboring man, fifty-nine years of age, of the fruits of a lifetime of toil by requiring him to sell or mortgage his modest home in order that he may reduce the tax burden on the other taxpayers of this state by such an inconsequential amount should not be today's social and economic policy.

While recognizing the soundness of the support laws and that they must be strictly enforced in appropriate cases, we feel that this defendant is not presently of sufficient financial ability to contribute to the support of his daughter and therefore does not come within

---

[1] Act of June 24, 1937, P. L. 2045, as amended, 62 PS §1973. "(a) The husband, wife, child, (except as hereinafter provided), father and mother of every indigent person, whether a public charge or not, shall, if of sufficient financial ability, care for and maintain, or financially assist, such indigent person at such rate as the court of the county, where such indigent person resides shall order or direct. No child shall be liable for the support of any parent who abandoned the child and persisted in the abandonment for a period of ten years during the child's minority."

the provisions of the Act of Assembly above cited.

Order reversed.

GUNTHER and WOODSIDE, JJ., dissent.